Good morning, Your Honors. My name is Mark Griffin. I represent the plaintiff's appellants in this case. One issue in this case seems to be very clear and very easy, and that is the fact that a defendant who did not apply for attorney fees was awarded attorney fees. But why is that really an issue, considering this organization is not a partnership, it's not a corporation, it has this murky, ephemeral creation, and all the individuals were served, and all of the individuals were part of the original lawsuit, so why is that even relevant anymore? It's relevant because, you're right, it's not a corporation, it's not an LLC, it's a government body. It's a public body. The big one, that's the more complicated and also Why is it a public body? It was created and then it was created kind of as a community. So a public body, it seems to me that they have a variety of different requirements, and there were some, but they disappear. I think as I look at the case law, there's even one case where they sued and the court said they didn't have standing. If that is the case, then how could the defendants, who requested fees for time after the CPO stopped actively, they continue to represent them? What about the individuals? I don't understand. What about the individuals? I guess you started with this is a rather significant issue, but okay. This corporation or this group or this community no longer exists, but you have these individuals. Why aren't they entitled to attorney's fees? The question might be better phrased as which attorney fees, if any, are they entitled to? Because we have a court. Part and parcel of the same analysis, at least to me, the fact that CPO is now effectively defunct. CPO is effectively defunct, but yet there are these individuals who have now been awarded attorney's fees. So I don't know why the entire judgment has to be overturned just because it's awarded in favor of CPO defendants, plural. Which part of those fees were these individuals entitled to, and which part of these fees is the CPO entitled to? They were all individuals with the CPO. They were all individuals. They were all in it together. They all responded. They all had the same group of lawyers from the law school, and they represented them all on one claim, and that's what they're entitled to the attorney's fees for, or that's what they claim attorney's fees for, and that's the tort claim. Correct. So I'm having, I'm really kind of confused as to, just as the judge has said, why it has to be remanded. Well, there currently exists a judgment against my client where the judgment creditor is the CPO. That is a problem for my client on any number of bases. Not just the CPO, though, the individuals as well, correct? Well, that's true. But still, there is a judgment against my client by the CPO. If we remanded this case to the district court, what do you suppose the district court would do? I suspect that the district court would have to do two things if you remanded it. Number one, they would have to make clear that the, who is being awarded the money, and the district court would also have, and the defendant, would also then have to segregate time for the, that he devoted to the CPO, as opposed. Why would there have to be time segregated if the purposes were one and the same? I mean, the individuals, in essence, were the CPO. Yeah, the CPO was not, as you said, not a corporation, not really, it's a federal entity. And so, are you saying that each and every individual would have to be accorded some small portion of the attorney's fees? They all acted, it seems to me from the record, they acted as a group. And isn't it on appeal, sometimes you have one of the parties disappears for one reason or another, and it makes sense here, it was defunct. It's gone. I don't know the, okay. Defunct, as far as I know, is not a legal term. It stopped operating. It's a fact. It's a fact that it stopped operating. It's a fact that it stopped operating, and it's a fact that Clackamas County told it to stop operating. That's a fact. But, again, the issue, I think that the, to answer your question, these individuals are not the CPO. The CPO. Well, I mean, assuming that there's no other defects with the award of attorney's fees, at most on remand, the district court can just strike the CPO entity from the judgment, and would that solve all of your problems? It wouldn't solve my client's. Which is why I don't understand why it really makes a whole heck of a lot of difference that this defunct entity got included. It wouldn't solve my client's problems for the other reasons that I stated, including the failure to segregate fees done for the CPO as opposed to fees done for them. Where is the law that requires that, really? It's Oregon law. If the district court could have done, just as the judges said, could have done, if we remanded it for that purpose, and it's a matter of law that the court could do it, then why wouldn't we then just uphold the decision, but essentially understanding and making clear that the CPO no longer existed? Because there was work done for the CPO that was claimed as fees that was not done for the individuals. Yes, and the record does establish that. Where do we have that the individuals, under no circumstances, were not the same, as you have in a partnership or a closely held corporation, they are essentially the same as a corporation, although the corporation essentially has a name? In pages, if you ask me to cite all of the brief, pages 12 through 15 of my opening brief explains. Not the brief, the record. The record. Show in the record. I cited the record. Well, cite it to us now. Okay. Where in the record can we confirm that there was legal work done for the CPO that was not for the benefit of the individuals? For example, $5,788 in expert witness fees. They did not, the expert witnesses did not segregate time spent on a due process claim from, which only involved one individual, which only involved one of the appellants and the tort claim. So I was hoping that you would be able to point us to where there was a specific billing that was tethered to the CPO as opposed to the individuals. Well, I have been hoping that. Do you have that? No. Do you have that in the record? But the rule under Oregon law, and this was done under Oregon law, is that that is the responsibility of the party who is applying for the fees to segregate those. Perhaps there was no segregation required because the work was for the joint benefit of all represented. In that case, the party applying should have said this work applies to everyone. They don't have to say that. Why would they have to say this work applies to everyone? That's implicit in the billing. It's not implicit when the billing shows that some of the time entries only apply to one claim as opposed to another claim. Not one claim, one part. My focus is on where there were billings that applied to the CPO and not any of the individuals. Not the claims, but whether or not it applied to a party that you're saying should not have been awarded fees. If it was global, if the billing was global, then there was no problem. It was just an era in the district court naming CPO when it shouldn't have if the billings applied to all of the parties. And, you know, I kind of wonder, too, how the CPO should have ever been sued in the first place. It seems to me as I look at the website for this county, they're just a group of volunteers that are an advisory group. And are you saying that any of these individuals were not part of this advisory group? I mean, they don't even have authority, at least by one case, to sue. So if the district court made a decision only based upon the fact that they were Why is it that you don't then pierce it, if that's what you could call it, though it's not a corporation, to the individuals? They're just volunteers. They just provide information to the county about primarily property. We have to distinguish between these five individuals who admittedly are CPO and the CPO. When you talk about volunteers who give information to the county, it's done in a town hall basis. This is part of a long history of participatory democracy in Oregon. In other words, they didn't have authority. These five individuals didn't have authority to do what you said. The CPO did. My sense is the CPO never should have been sued because they don't have a status other than by a website by the county that says, hey, you can have an organization of volunteers that make suggestions to the county. Well, unfortunately, there were two problems with that. The CPO threatened to sue my clients. That's one problem. The other problem is that there's no case law on this. We have been trying to figure out this is all new law. This is all very interesting law. But it's very interesting law in the context of a history of participatory democracy, town hall meetings, and responsibility of people in terms of what they are doing. By the way, the CPO has more than just advisory power. The CPO has the authority to object to a finding by the Planning Commission. It's like a volunteer would. No. No. The CPO has the authority on behalf of the community to appear in appeals and make an appeals of decisions. An individual does not have that. The only other individuals who have that right are individuals who live within a very close area, proximity to where the land use is going to occur. But these individuals did not have the right to appeal. And they could have complained, but they didn't complain on their own. They did this in the context of we are the CPO. They were not. But why would they have sued then? Why were the individuals sued if they didn't have any authority? Well, they were threatening a suit for environmental. You said the CPO was threatening the suit. They did. It seems to me you're saying the CPO was the problem. But then the individuals, why were the individuals sued? The CPO did threaten to sue for a violation of the Endangered Species Act. Well, then why were the individuals sued? Why were the individuals sued? Because they had violated the bylaws of the CPO. Do you concede that the district court could properly award fees to the individuals? Yes. I concede that they could properly award fees to the individuals under certain circumstances, and that would be that he would have to follow, the court would have to follow the factors that I laid out. And including this one issue, which is very problematic, and that is we have a group of people who theoretically are representing a public body who are attacking, through their request for attorney fees, a citizen who is complaining about the conduct of the public body. And unfortunately, I said in the appeal here a couple of years ago, we had an issue of whether or not 31.250 would even apply in this case so that attorney fees were awardable. Well, if they had to seek legal help to defend against a lawsuit that was brought against them, why wouldn't they be entitled to attorney's fees that were spent defending against a lawsuit that was brought against them? Because 31.250 does not, that is, violates the policy of the slap action. And that was established, unfortunately, after the first appeal. And I had raised that issue in the first appeal. And again, one of the factors that the court would have to decide that they refused to decide, that they did not decide, the court did not decide, was what is the effect of imposing this kind of monetary damage against my client on the ability of other citizens to complain about the conduct of public bodies? That is a real, that is a real key issue. Well, let's assume that the CPO was not defunct. Then your client would still owe the attorney's fees, right? To the CPO. So the only issue is whether or not your client owes the attorney's fees to the individuals, but I thought you said. No. If the CPO was not defunct. And adjoined to the motion. And if the CPO was not defunct and had not asked for attorney fees, no, they would not be entitled to attorney fees. But if they did ask for attorney's fees. Excuse me? If they did, if the CPO and the individual defendants sought attorney's fees. And that brings us to another seemingly very, to my client, very critical issue. The attorney who claimed to have represented the CPO never had an agreement with the CPO. That is problematic. Because he's representing a public body. He tells the court that he's doing it on a pro bono basis. Note the CPO as a body is never told he's representing them. He's making, he's rejecting settlement offers made to the CPO without advising the CPO of the settlement offers. He's making settlement offers on behalf of the CPO without the CPO knowledge, that is the body. Isn't that a complaint that the CPO would have? Not a complaint that you would have. That would be a complaint that the CPO would have against his purported counsel under your version of the facts. But why would your client care whether or not the CPO consented or whether or not there was agreement? Why would your client care about that? Because my client tried to settle with the CPO. And these individuals violated his ability to do so. They treated the CPO as a personal fiefdom. It is a public body. The public body did not even know what these individuals were doing. All right, counsel, you've exceeded your time. We'll give you one minute for a rebuttal. Counsel, could you remain at counsel table? Good morning. May it please the court. We know you're done with us, but we're not done with you. Good morning. May it please the court. My name is Daniel Rolf, and I have the honor of representing the individuals that were initially sued by Mr. O'Connor and his co-plaintiffs, Don Mensch, Janine Bertram, Dave Fulton, and Roy and Donna Bellows. They were all ---- And the CPO as well, before it went defunct? Yes, indeed. I did represent the CPO before it became defunct. The CPO is simply an amalgam of volunteers that get together and try to involve their neighbors in land use decision making. And that fulfills Clackamas County's obligations under the Oregon land use rules to encourage public involvement. So when we talk about the CPO, and I sort of put air quotes around that entity, it is literally the CPO in and of itself, other than its officers and its committee chairs, which are the volunteers that get things done, the only thing the CPO does, the rest of the CPO is literally whoever shows up at a meeting who lives or has a business in a defined geographic area. So that is the CPO aside from the volunteers. But as a technical matter, there is an error in the judgment here because the individual defendants were the one moving for attorneys' fees, and the judgment was essentially issued in favor of CPO defendants as that group was utilized in the litigation below that would include also the CPO entity that is no longer in existence, right? Is that at a minimum an error that needs some correction by the district court? That's correct, Your Honor. When we moved for attorneys' fees, we moved on behalf of only the individuals because the CPO was defunct at that point. And Judge Simon's fee order simply used a shorthand of CPO defendants, which based on an earlier footnote included the individuals and the CPOs. But does it meet amendment or it really doesn't matter? It's our position as we articulate in our briefs, Your Honor, that that is a harmless error. Mr. Griffin was talking quite a lot about the claims against the CPO versus the claims against the individual defendants and how those had to be differentiated. I want to be very clear here that the only fees for which anyone has sought fees from a court are the State tort claims that are covered by the State anti-SLAPP statute. That State tort claim, intentional interference with business relations, was pressed in the complaint by the defendants against the CPO as well as the five named individuals, completely undifferentiated. In all of the arguments on dismissal of that claim and all of the evidence presented, the plaintiffs never presented different evidence against the CPO versus the individuals. We never briefed that. That was never an issue. And so when Judge Simon dismissed that case — excuse me, dismissed that claim based on the State's anti-SLAPP statute, he did so based on arguments against the — involving the individuals as well as the CPO that were completely undifferentiated. And — And he did so based on arguments against the CPO defendants again or not just the CPO? I think that's what you started with, the CPO defendants. Judge Simon uses that term in his fee order and in the fee judgment. That's correct, Your Honor. Okay. So that arguably he could be referring to all the defendants who were sued, and we know all the defendants were sued in addition to CPO. That's correct, Your Honor. And that's how you read it, and that's why you didn't file a motion for reconsideration to make it clear? We have — there's a footnote in his fee order where he actually lists what he terms as the CPO defendants, and he lists each individual as well as the CPO. Is that in the fee order or in the judgment? I didn't see that. The footnote is in the fee order, and then in the judgment he simply refers to CPO defendants. Okay. So that's not defined itself in the judgment, although that's how Judge Simon defined that term. Is that on appeal? In the fee order. The fee order? The fee order is what is on appeal, yes, Your Honor. I mean, that's part of the record. That is part of the record. That's the initial document in the record. I thought he defined it in the opinion and order is where he defined it. Yes, that is correct. But not in the fee judgment itself. That is correct. Okay. That is correct. And so it is true there was one claim after Judge Simon dismissed the State tort claim against all defendants, including the individuals and the CPO together, there was one claim that was remaining that we litigated and Judge Simon dismissed on summary judgment, and that was a civil rights claim against one individual, Don Mensch, and Judge Simon granted Mr. Mensch's summary judgment on that claim. However, we are not seeking fees for that claim. The only claim for which we sought and received fees from Judge Simon were the State tort claim. Counsel, what's your response to opposing counsel's observation that there was no fee agreement between counsel and the CPO? What's your response? That's inaccurate, Your Honor. I have a fee agreement in my file in my office between both the individuals and the individuals signed that on behalf of the CPO. The plaintiffs and now appellants have continued to seek discovery of that fee agreement. However, our clinic at Lewis and Clark Law School does not release its fee agreements, and Judge Simon decided that release of that fee agreement is not relevant to the issues in this case. And so when Mr. Griffin argues that there is no fee agreement, he's not seen the fee agreement, quite frankly, although he has sought that, and Judge Simon ruled that that was irrelevant to the fee issues in this case. What about the representation that his client tried to settle with the CPO and those offers were not referred to the CPO? What's your response to that? Well, a couple of responses, Your Honor. Some of the settlement discussions took place well after the CPO became defunct, where it was obvious that there was no CPO whatsoever. A couple of the other offers were made to the CPO — well, to the defendants. But again, as I explained, the CPO is literally whoever shows up at regularly scheduled meetings. So when the plaintiffs send a settlement, a proposed settlement that by its own terms explicitly specified that it would expire within two or four days, it literally was in possible, even if the officers wanted to wait for a meeting of the CPO and see who showed up and say that there's a settlement offer on the table, that offer would have long expired. So it was completely reasonable for the officers of the CPO to respond to settlement offers. And as we explain in our brief, with respect to the fees for the state tort claim, all five individuals had said no to those settlement offers. And so even if we can wave a magic wand and we're not conceding anything, the CPO had a meeting and said, oh, yeah, we'll settle for that. That would have been essentially meaningless because the individuals who had the same attorney fee claim rejected those settlement offers. With regard to the rejected settlement offers, was it brought to the board or the membership's attention? Because the bylaw seemed to contemplate the membership being notified of all significant actions and ratification if the offer expires prior to the next meeting. For those settlement offers, I'm not aware of what, if any, discussion there was at a general meeting later after those settlement offers expired. So I'm not aware. And there's nothing in the record that indicates to my knowledge whether or not those issues were discussed with whoever showed up. Your clients were successful, ultimately. And as I understand, the settlement offer required the individuals to retract their statements about his development, resign from the CPO, agree to not act as CPO officers for a decade, and pay their own attorney's fees. So can one say that that kind of offer would not have been accepted by anyone, particularly retrospectively, when they were successful? Well, I think it's quite clear that the individuals would never accept an offer like that. It would be patently unreasonable for them to say, I won't volunteer for an entire decade. Now, it's impossible to say what people who showed up at a meeting would have said about that. I really don't know. I suppose it depends on who shows up. But with that sort of an offer, it was eminently reasonable for me as their attorney to rely on the officers and board members of the CPO to direct me as to whether or not to accept that settlement offer. So we don't have, that's not in the record, whether or not there were some after-the-fact discussion with whoever showed up at the meetings. We simply don't know. Not that I'm aware of, Your Honor. Finally, Judge Simon, just to hit a couple of other issues on appeal, Judge Simon took a very careful look at the billing that we submitted, and as you can see from his fee order, he rejected some entries. He imposed a 10 percent haircut. And so we submit, Your Honors, that all of those fees were reasonable and that Judge Simon did not abuse his discretion in awarding the amount of attorney's fees as he did in his award. Finally, Mr. Griffin raises a raft of other issues, such as that the CPO is a public body, et cetera, et cetera. And as we point out in our briefs, those are, and as Judge Simon actually found in his fee order, those are simply efforts by the appellants to relitigate issues that Judge Simon rejected on the merits. And so we encourage this Court to refuse to entertain those merits issues as well. Finally, I'll just go back to close to a couple of things. My clients have been dealing with these sorts of arguments for the better part of a decade. One of my clients couldn't even come to the oral argument today because she said she just had to sit by the river and chill and not subject herself to reliving these sorts of issues again. This sort of behavior and this sort of use by the judicial process by the plaintiffs and now appellants is precisely what the Oregon's, what Oregon's anti-SLAPP statute was meant to deal with. We submit that Judge Simon recognized that and that Judge Simon appropriately issued an order of attorney's fees in my client's favor based on Oregon law that says such fees are mandatory in cases where there's a, the lawsuit is determined to violate the terms of Oregon's anti-SLAPP statute. Judge Simon considered all of the factors he had to, explained why some were not relevant, and we encourage this Court to uphold Judge Simon's award of fees as reasonable, and we also encourage this Court to allow us to submit to this Court rather than having to go back down to district court, which just provides another opportunity of appeal. I really don't want to be back here in two more years, but provide the appellants, the appellees, my clients, an opportunity to appeal if the Court decides in my client's favor. Thank you. Thank you. One minute for rebuttal. Very quickly, the attorney for the CPO just said he didn't know whether or not a settlement offer was made to the CPO. That's what he said. He was representing the CPO at that time. He has a responsibility. The attorney for the CPO said it's an amalgam of people who show up at meetings. The bylaws of the CPO says the membership are people in a defined geographic area. They make decisions by giving notice about issues and by deciding in the town hall meeting what to do. There has never been notice that Mr. Roth represented them. There has never been notice that there were fee offers made or rejected on behalf of the CPO, regardless of what the fee offers were or the settlement offers were. Never. And we know that because the CPO is a public body that is subject to two laws in Oregon. The public meetings law, which requires notice and other procedures, and the public records law by its own bylaws. So if there, if Mr. Roth represents the CPO, we know that under the public records law, there should be a record of it. The record is very clear in this case that the CPO does not have any record, not only of Mr. Roth representing them, but Mr. Roth ever coming to a town hall meeting, to a CPO meeting. This is very distressing from the standpoint of citizen involvement, participatory democracy, and any number of, and basically our history in Oregon. All right, counsel. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. The final case on calendar for argument this morning is Whitener v. Taylor.
judges: Rawlinson, Nguyen, Silver